19-1010, Northern California Power versus United States. 19-1010, Northern California Power versus United States Power versus United States Mr. Schwartz, please proceed. Good morning, and may it please the Court. Jeffrey Schwartz for the Northern California Power Agency. I'll start with something on which both sides in this case agree. Both sides agree that if Congress appropriates exactly $50 million each year from the Restoration Fund, then the CVPIA protects power contractors from having to pay disproportionate payments of restoration charges. In that case, both sides agree proportionality is binding, and that means if water and proportional power payments together add to less than the targeted amount, the remainder goes uncollected. That's at pages 22 to 23 of the government's brief, and it's in the record at document 103, ECF pages 18 to 19, and document 99, ECF page 52. We're here today because the government and the trial court wrongly interpret the act to require the opposite result if Congress appropriates $1 less than $50 million each year for expenditure from the fund. In that case, they demote proportionality and prioritize revenue collection. I'll explain why that's wrong. Before you get into the meat of your argument, can you clarify for me something? I went back and looked at the various appropriations acts for the last few years, and the number bounces around between $50 million, $55 million on the high side to $49 million, I guess, at one point. $41 million at another point. Am I incorrect in thinking that those implicate either section sentence 1 or sentence 2 of 3407C2? My understanding is that every year reclamation requests a certain appropriations amount, and Congress has adopted it every year. But sometimes it's more than $50 million, sometimes it's less. Correct. My question is, are we governed in each year by either the first sentence that you've just identified, the two sentences, the first sentence or the second sentence, or is there a single rule that applies to all of these appropriations acts going back to – I went back to 2014 just to pick up the statute of limitations. I think in theory you could be under either the first sentence or the second sentence. I think that, in fact, the number has not averaged exactly $50 million in 1992 dollars. Just remember, all of the dollar figures expressed in the statute are expressed in 1992 dollars, and that gets indexed up. Does all of the references to 1992 dollars get indexed up? Almost all of them. Well, how about the $6 per acre foot? They do as well. Is that being charged at 2019 dollars, or is it being charged at $6? It gets indexed up. There are certain charges under the act that are not indexed. What the government refers to as the non-discretionary revenues, those are imposed under other sections of the CVPAA, 3404, 3405, 3406. Just to follow up on Judge Bryson's point, when the government alleged in its brief, because this was something that I was wondering about myself, that one of the ways in which they tried to honor the greatest degree practicable portion was by always charging the $6 and the $12 for water. That isn't exactly right in that they weren't charging $6 and $12. They were charging whatever the inflationary rate for a given year was. Correct. Not necessarily $6, maybe it was $6.50 or $6.75. They were just using a shorthand in that case? Correct. Okay. That's my understanding. All right. For convenience, all the parties are using the 1992 dollars. All right. Thank you. So the government believes that on one hand, if Congress appropriates $50 million, then proportionality binds. On the other hand, they say if Congress appropriates just $1 less, then revenue collection takes priority. What is proportionality in this case? What does it refer to, proportional? Is there some percentage established somewhere between water and power? Yes. It refers to the share of the underlying project costs that each party is responsible for. Can you tell me roughly how that shakes out? Yes. Currently, it's about 25% to power and 75% to water. Okay. So the underlying project costs are 25% power, but what percentage are the power users in the years in which you're appealing actually paying? So over the 10 years preceding trial, reclamation charged almost twice the proportional amount. You're taking these from Appendix 243. Is that where the numbers show up? They appear there, and they also appear in Exhibit 4 to the amended complaint, which I don't think is in the appendix. So when you say twice as much, you mean 50-50 between water and power? Almost. It was almost 50-50. About 50-50. 48%. In dollar terms, that amounts to a legal exaction of more than $120 million. Now, the government's effort to defend that— It's just so bizarre. I mean, maybe this is to some extent Congress's fault, but the result of this is when one of the two resources has become scarce, water, the water people pay a disproportionately low amount for water. In economic terms, this seems absurd and inefficient, right? I mean, when there's a scarcity of a resource, you would think it would drive costs up, but Congress has capped the cost for the water users, and they're making the power people, for whom there is no scarcity of resource, pay much, much, much more power than they would have otherwise. Does that sound about right from an economic standpoint? It's a bizarre— In the economic sense. Correct. It isn't rational in the economic sense of the word. Correct. There's one caveat, one clarification I would add, though. When there's no water, there's no water, but when there's no water, there's also no hydropower. So the government's interpretation, well, the way we interpret the statute, all of the limitations in subsection D work together. In a high-water year, without limitation, I mean, without proportionality, if proportionality was not in the statute, in a high-water year, then the government could charge all of the $30 million to power users or to water users. But proportionality says no. Proportionality tells you how much of the $30 million goes to each group. We think that the statute works— Has there ever been a high-water year? There are occasionally high-water years. And when there's a high-water year, does the government do it just out of curiosity on some sort of rolling basis? And what I mean by that is why don't they look at the 10 previous years and the way in which the power people disproportionately paid and then tax the water people to make up for that? Well, I agree with you. They interpret the statute consistently to favor water users. I have a few questions. One is, during all these drought years, the government has been trying to collect $30 million of M&R payments, right? Yes. Collectively from power and the water. And let's say, for purposes of my question, every year is authorized an appropriations of $50 million, approximately $50 million. Are there ever any years where the government is—or Reclamation is unable to hit that $50 million mark? Because from whatever other sources of payments they're supposed to collect from, they never add up to $20 million? Do you understand my question? I'm sorry, I heard two different things in that question. I'm not sure that I quite understood it. Let me try. I believe in most years, perhaps all, other revenues have not equaled $20 million. So on their interpretation, they're constantly trying to get to the $30 million. So for several years, although there's this command, at least from their point of view, to collect $50 or approximately $50 million, there are several years where they don't do that, even when they try to max out 3407D payments through extracting $30 million from— That's correct. I think that's the typical situation. Okay. The other thing I heard in your question—I just want to make sure the record is clear— I heard you say that if Congress appropriates $50 million. Well, no, if Congress appropriates $50 million, then under the government's view, proportionality would be binding, and they would potentially collect less than $30 million. Because the way they think it works under the appropriations approach and the way we think it works under both approaches is as follows. In a dry year, the acre-foot caps and the ability to pay relief are what limit water's charges, and Congress limited power's charges by requiring them to be proportional to water. Right. Power charges are tethered to what water pays. Correct. That's correct. And this actually is not a problem under the statute. First, the $30 million—I mean, if Congress wanted to drive collections to $50 million every year, they could have. They didn't need to include the cap on combined water and power charges. The $30 million is phrased as a cap. It's not a floor. It's not a set amount that has to be recovered every year. Reclamation has other appropriations that it can and does draw upon in dry years or otherwise to achieve CVPIA purposes. You can see that in Section 3410, and there is a stipulation in the record. It's not in the appendix. I believe it's Stipulation 26 in Document 78. Reclamation has actually used more than $700 million of other funding for CVPIA purposes. Do you know why Congress added in 3407D the provision to cap the amount that can be collected from water? Are you referring to the acre-foot caps? Yes. I believe that they were worried about affordability to water, and I believe that— Why affordability for water and not for power? Well, but they were worried about power. I guess if I had to choose one or the other, I'd choose water. I want my toilet to flush. So, you know, that's—it doesn't make sense to me. But I guess that's— Well, go ahead. I guess that's what I'm saying. It's affordability for water, and by virtue of proportionality, affordability for power. And if there's a shortfall, there are other appropriations available for CVPIA purposes. So I'm—what explanation, if any, do you think there is for the difference in language that Congress used with respect to the sentence 1 and sentence 2, where they said subject to, and then in the second iteration, subject to the limitations of? So why are there— The government attaches significance to that. What do you have by way of an explanation for it? So they do—there is a difference. Under the first sentence, they have to try to collect $50 million every year subject to subsection D. Under the second sentence, there's a three-year rolling average on the $50 million collection. Well, I understand that difference, but why does that express itself in the form of subject to, on the one hand, and subject to the limitations of? Because you have to attribute— It doesn't. —some kind of rationality to the way these statutes are crafted. And here, I'm not finding an explanation. So I'm looking to you for— So I agree with you. The phrase subject to subsection D and the phrase subject to the limitations of subsection D is synonymous. If I'm invited to a conference and I accept subject to my availability or subject to the limitations on my availability, that's the same thing. The extra words have not changed the meaning. Well, you could say they're different. You could say that subject to my availability is my choice. Subject to my limitations on my ability are imposed externally. I mean, they're different words, and we have to start at least by trying to find an explanation. True, but not at the expense of distorting the plain meaning. And C-2 uses the word limitations. Proportionality is a limitation. They treat it as a limitation under the appropriations approach. They actually treat it as a limitation under the other approach as well. Well, let me ask you another question about that, which is what do you think to the greatest degree practicable means? If it's your view that there is an allocation for proportionality of 75-25, then why wouldn't it just always be proportional 75-25? What do you—when is the greatest degree practicable? When do you see deviation from the 25-75, and when will that meet the practicable? Okay, so there are three answers to that question. The first one is that Congress, when it wrote the statute, expected these charges to be calculated prospectively before the beginning of each fiscal year based on estimates of water deliveries. You can see that in 3407-D1. And estimates are never going to turn out to be exactly spot on. So that's one source of potential impracticability. Now, the government may say, ah, but when we actually apply it, we do true-ups at the end of the year. And if you apply true-ups and our view of what proportionality means and that it's binding, yes, you can get to proportionality. That's not a problem for Congress. Congress said maximize proportionality. Do it to the greatest degree achievable, to the maximum extent practicable. If it is practicable, that's a good thing. That's what Congress would want. Practicable and achievable are not by any means the same. Achievable to the greatest degree practicable. Sorry, I misspoke. So Congress wouldn't want us to manufacture reasons to make it impracticable just to give some meaning to the words to the greatest degree practicable. They wanted us to maximize proportionality. What do you think Congress, in your view, must have realized ahead of time when it wrote that language? What circumstances did they envision that it would be impossible to make an accurate, precise, proportional arrangement between water and power? So as I said, if you're doing this in advance based on estimates of how much water is going to be delivered, remember, power gets allocated a lump sum dollar amount. And that gets told to Western. Western charges the power contractors. That gets collected regardless of how much water actually occurs during the year, regardless of how much power is produced during the year. The water contractors are different. They get charged based on water actually delivered. So when you're setting charges ahead of time, you're going to make a guess as to what you think that's going to be. But the reality is going to turn out to be different. But then you said the true-ups take care of it. That's correct. So that sort of filters that problem out, doesn't it? Yes. It's not clear that Congress had that in mind. But even under the true-ups, there is a circumstance under which proportionality, strict proportionality, would be impracticable. There is one subsection D charge that the government has no discretion to reduce. That's the $25 per acre foot charge on certain sales and transfers. There's no ability to reduce that charge. So if there's enough of that water and enough of those charges in combination with other revenues, that could take care of—I mean, that could exceed 75% of the combined cap, which is now $30 million. Eventually later it may drop to $15 million. If there's enough of that water to go beyond 75% of the combined power and water cap, that would be a source of disproportionality that could not be avoided. Okay. Well, we have used all your rebuttal time. I just have one quick question. Sure. One last question. Yes, sir. The back half of your brief makes a lot of arguments about or complaints about undercollections from water by the government. Hypothetically, if you were to wing out your statutory construction argument, would you still have those arguments? I mean, those arguments would— There would be no need to reach them. Would tend to cut in your favor then, right? Because if they're undercollecting from water and power payments are proportional to water payments, it's actually good for you that they undercollect from water, right? Because if their payments go down, then proportionally your payments are also going to go down. You benefit from their laziness. Retrospectively, in this one instance, yes. So then you would withdraw all those arguments from your— Well, you wouldn't need to reach them because the statutory construction argument asks whether the government can impose disproportionate charges in order to make up for deficient water collections. If the answer to that is no, you don't need to decide whether the government minimized those deficiencies. And going forward, the government actually would have an incentive if it has lacked so far to enforce the statute equally and carefully against both water and power and water contractors. Okay. Thank you, Mr. Schwartz. We'll restore two minutes of rebuttal time for you. Mr. Oliver? Thank you, Your Honor, and may it please the court. I first want to start with clarifying the two approaches that are identified in 3047C2, which the parties have described as the appropriation approach and the $50 million approach. I don't believe either party to speak to that. For the time period that governs this litigation, the $50 million approach governs. But let me first explain the difference between the two approaches. The appropriations approach, as you read the language in 3047C2, provides that the amount that reclamation is required to collect is going to equal the amount that will result in classing during each fiscal year of an amount that can reasonably expect it to equal the amount appropriated. So the funding target is, in essence, what Congress appropriates for the restoration fund, subject to all of subsection D. So that would include proportionality. But there's a time period that this applies to. Because if you continue, it says provided that if the total amount appropriated under subsection B of this section for the fiscal year following enactment of this title does not equal $50 million on an average annual basis, then the $50 million approach applies. So the appropriation approach only applies from the enactment of the statute 1992 to 1998. There's no dispute. As a trial court found, and they don't dispute, that Congress did not on an average annual basis appropriate $50 million, which means from 1998 forward to the present going forward. So as long as this act applies, the $50 million approach governs. So focusing on the $50 million approach, Congress said that Reclamation shall, it is required to collect, charge $50 million, subject to the limitations in D. Now, the limitations in D are demarcated in the O to D by the provisos. Because you see in 3047— Well, that's the question in the case. Well, I'll explain why. I want to hear why, because I will tell you that my first read of the statute suggests to me that it's peculiar to view limitations as being specifically restricted to the provisos. So explain to me why my first read is wrong. Absolutely. So let's first start with the sentence in 3047C, which says that Reclamation is required to collect $50 million subject to the limitations. So the limitations are things that will restrain, restrict, curtail Reclamation's ability to reach the $50 million. Except for one of the limitations, which is money that they actually are allowed to collect out of the various provisos. Right. But the point of the limitations, what I'm saying, what are the limitations? The limitations are things that somehow restrain or affect, modify Reclamation's ability to reach that $50 million target. So when you go to 3047D-2 and folks are—OK, so it begs the question, what are the limitations? It says in 3047D-2A, again, it replicates the $50 million. It says, Secretary shall require CBP water and power contractors to make such additional annual payments as are necessary together with all the other receipts. That's the whole restoration fund. Required under paragraph C-2. So that amount is the $50 million because, again, we're saying the $50 million approach applies. So it's saying that you must collect the $50 million. But here's the key. Provided that you can't charge more than $30 million on a three-year rolling average basis for M&R, the only charge that both water and power contractors pay. So that's one limitation. You can't charge 45% versus getting 50%. You're stuck at 30%. So that's one limitation. You can't do more than 30%. The other limitation is the one that you talked about with my friend, which is you can't charge water more than $6 and $12 in 1992 dollars. $6 for agriculture, $12 for— To cut to the chase, are you going to walk us through every one of the provided forms? No, I'm not. But let me just make the larger point. The point is for each of the provided, the provided is saying that you must collect $50 provided, meaning here's a limitation on it. Provided you don't exceed this limit, provided you don't exceed the water limit, et cetera. All of those express—the point is what I'm trying to get at is what is the provided expressing? We must import some meaning to the provided. And as the case law I mentioned provides— I think everyone agrees with that. It's about what to do about this last sentence. Why can't that last sentence likewise be regarded as a limitation in subsection D even though it doesn't begin with the word provided? Here's why. Because the question is not whether or not the proportionality provision, which follows the five provisos, is a restriction or limitation of some sort. The question is, is it a limitation on reclamation's ability to collect $50 million? In other words, is it one of those—just like the $30 million limit, something you have to adhere to that. In some sense, it supersedes the 50. You can't go above 30. You can't go above 6 and 12 for water. But is proportionality the same thing? Do you have to first collect proportion—make it proportional and then—regardless of the impact it has on the 50? Because if you—given the water limits, given the $30 million limit, if you're first going to say, well, what's the proportional collection? That's a fairly straightforward calculation. You can figure out what's 75 and 25 and do that. But if you do that, you also have to adhere to the—are you going to be able to collect the 50? And so the point is the limitations, the provisos are saying that these are the things that you cannot—you have to adhere to first before you do what we say, which is collect the 50. Let me ask a question this way. Suppose that the words provided that had appeared before the sentence, the amount of the mitigation and restoration payment made by Water and Power shall be proportional. Would you agree then that the proportionality requirement would be a limitation? If I understand your question, Your Honor, correctly, I would absolutely agree. No, I'm sorry. Let me finish my sentence and make sure we're connecting. I absolutely agree that if it said you must collect $50 million and it said—instead of saying and provided further with regard to the completion percentage, but said and provided further that the—you said assess Water and Power— The amount of the mitigation and restoration payment. Right, right. That the proportionality provision is preceded by provided absolutely because that's including among the list of things that restrict reclamation's ability to collect 50 is proportionality, and then they're right. So your argument is predicated entirely on the absence of the words provided for at the beginning of that sentence. Yes, Your Honor. As Your Honor mentioned with my friend, the words matter. In other words, the Congress was purposeful in saying it's one sentence. Collect 50, provide it, provide it. Here are the limitations, and it could have said and provided further. You make assessments proportional between water, but it didn't, which means that the first thing you have to do is collect the 50. Consistent with all the caveats, all the limitations, and then do everything you can to the greatest degree practicable to make it proportional. Now, given—as a trial court found—given the fact that there are drought years, 2014 and 2015, and throughout the time period relevant to this litigation, water revenues have been depressed. You still have that $30 million target, and you have to try to reach the 50 by maximizing the 30 precisely because the revenues that you just mentioned didn't materialize to the extent that Congress thought they would. So even though government's collecting $30 million total from 3407D, most recent years they still haven't been able to hit the $50 million target. Is that right? That's correct. I don't think they've hit it any year because— Or any year. Any year because those other— So then Congress issues this command, thou shalt collect 50 million, but it hasn't been happening at all for the past decade or so. You're right. Well, Congress said precisely in 3047D that you must set the payment such that you can reach the 50, understanding that there's $30 million for M&R. So what that means, though, is given that there are these other provisions, what we call the non-discretionary, that's the non-M&R charges. There are five different charges. Congress was assuming that maybe there's some years you'd have $30 million, and therefore the M&R was 20, or maybe you'd have 40, so it's 10. I mean my colleague referenced D1. That's exactly what D1 admits is that you anticipate that you might be over 50, and then you can reduce it to meet your portion. Now, that's never even come close to happening because for a variety of reasons, the non-discretionary revenues have not emerged that Congress thought they would, thought these various things have potential to reduce water revenue. But for a variety of reasons they can go into, it did not happen, and also impacted by the fact that you have these droughts. And so if you have droughts, there's less water. You can't charge water only so much. And given the command to collect the 50, you have to do everything you can to reach the 50. You have to charge the 30 for the M&R. With the water limits, that means power is going to be paying the difference between the most you can charge water and that $30 million ceiling. And that's – given the paucity of water revenues, that is what Reclamation has been doing to try to achieve proportionality to the greatest degree practicable. Your view of greatest degree practicable allows for the proportion, which is supposed to be 75-25. That's Congress' goal is to keep it proportional. A goal but not a limitation according to you. So you think that Congress would have accepted that in some years power is going to pay twice as much and that would still meet whatever they meant by greatest degree practical? Eh, that's okay. You think that's their intention or just a sort of a maybe unthought-through byproduct of the statute they wrote? I apologize. It's not their intention. I don't think – I believe that what's called the original Congress in 1992. I don't think that they anticipated that those other five non-discretionary revenues, the non-M&R, would be so low. I think that they anticipated that, okay, we have $30 million ceiling for M&R. We have a $50 million collection target. Hopefully these other revenues will be high enough so that proportionality would be achievable. But when they aren't there hardly at all, then you're stuck with a vehicle in which you still – Reformation is commanded to collect 50 or do everything it can to collect 50, which means they have to collect the $30 million. And as to your point, as we mentioned in our brief, this has been an issue that has percolated in Congress. I mean we have submitted our citations to the fact that the power lobby has proposed a power cap, and Congress has said no, and we can go into what that means. But the point of it – the point is as the trial court found, there are numerous protections for water written into the statute such as ability to pay relief, such as the water limits, the 6 and the 12, that favor water. And it's not the province of the judiciary to correct that imbalance. That is how it's written into the statute. Is it okay if you wanted to ask another question about construction? I can wait. I was going to ask about the other issues. Oh, well, if I could on this. Let me see if I understand. And this was alluded to earlier. But to make sure that we're clear on this. If there's a year of extreme drought where, let's say, water only pays a million dollars and power gets very little power because there's not much water coming through the hydroelectric plant, so it gets a limited amount of power. Nonetheless, power would pay $29 million in that year. Is that right? It is true that given the requirement to collect – it's supposed to be $50 million, which means you're collecting the $30 million. Then, yes, power is paying the difference between the most you can charge for water, given the water limits, and that $30 million. So power would be paying $29 million and water would be paying $1 million. Under that formula, that's absolutely right, and that's required by the statute in terms of the – The statute is juggling various priorities. I'm sorry, go ahead. We reached that conclusion based – we say that that's okay because that was as close as we could get, as close as practicable. We reached that conclusion because the statute 3047D prioritizes revenue collection for the restoration fund, which is to mitigate the impacts of the Central Valley Project, over and above proportionality. That would not be the case had Congress included, among all of the other limitations, all the other prioritizes for proportionality, which it could have done. Those words matter, but they didn't precisely because that's how they were juggling it. One last point on that front because we spent some time, or at least I did with my friend, talking about the appropriations approach where that's not the case. At least for the first 92 to 98, that wasn't the case because it was subject to all of D, which means there were some – I mean we're extrapolating because there's no legislative history that we're aware of. But in some sense in the early stages that, okay, proportionality is included, and that's something you do have to consider first. But if Congress is not appropriating enough money for the fund, which is because there's going to be a tension, then we're just going to require 50 and proportionality is to the greatest degree you can. But we're going to have to start getting funds to ameliorate the impact of the CBP. I think the phrase to the extent practicable for the first sentence and the second sentence of 3407C2 mean different things because those are different contexts. Oh, I'm not following the – I apologize. Well, I'm sorry. The first sentence says subject to subsection D of this section, and the second sentence says subject to the limitations in subsection D of this section. Correct. And so obviously you're making a big argument about the additional language of the limitations. But I think I heard you say that for the first sentence, then the proportionality provision applies as a constraint. And therefore, the language in that proportionality provision to the extent practicable simply means just do the best you can to be as precise as you can about proportionality. Whereas in the other sentence for subject to the limitations in subsection D of this section, the proportionality provision language of to the extent practicable really means we're going to try to keep it proportional, but if we can't, then we're just going to have to take it out of the height of power. Reclamation's hands in the second scenario are significantly constrained given the revenue target of $50 million and the $30 million for M&R and the water limit. So therefore, the ability to make it proportional is far more constrained, and therefore, the degree to which it's practicable means something different in that context. I mean do what you can, but your hands are to some degree tied. You're tied to extravagant factors like droughts and so forth. In the appropriations approach, which doesn't govern, I don't think any part of it argues that it governs. But under the appropriations approach, which again governs from 1992 to 1998, you start with proportionality. Just like you start with the $30 million and the 6 and the 12. You can't ever exceed those. You have to do proportionality before you concern yourself with the collection target. So in that context, to the extent practicable in the government's view means do the best you can in trying to come up with an accurate proportional payment plan. I mean I agree, yes. I mean it's easier to do so because you know the percentage is 75 to 25. Therefore, you calculate it, and to the degree the water limits might impact if you're off by a percentage or so, then that's the degree practicable. Whereas the second approach, you're far more constrained. I mean again, in the worst case scenario, you're well off just because of factors that are beyond reclamation's controls with respect to droughts, capacity of water revenues, et cetera. But to follow up on Jen's question then, I take it that what you're saying is that the words to the extent practicable do not mean that you would make the collection of funds, the proportional collection of funds from power subservient to the goal to collect $50 million or $30 million. Right. That's not listed under sentence number one, and then presumably the words mean the same thing in sentence number two. They do. What's doing the work is not in terms of the priority. It's the subject to and subject to the limitations of. So the whole argument is pinned on subject to and subject to the limitations of, not as the practicability issue. That's right. I would say that the order in which you must do proportionality versus the revenue target does not hinge on the degree of practical. It hinges on our argument that the limitations referenced in C-2 are the provisos, all of which are limitations on the $50 million. Can I ask? I think that you've exhausted the construction issue at this point, so let me ask a last question. Judge Wheeler-Below didn't address, it seems to me in particularity, the arguments that were made by the plaintiff regarding non-collection. Suppose that the non-collection was egregious. Suppose that the non-collection was 75% of the amount due by the water companies and no efforts whatsoever were made for collection. Would we have a problem under those circumstances? Well, the – you would have a – I mean the answer is – I mean there are kind of two elements to your question in terms of what the trial court did or did not address. But hypothetically, which is not the case, but hypothetically if there was no effort as you hypothetically suggest in terms of collection that it was we just don't care because we get it from power, then that potentially – that does implicate the greatest degree of practicability. But that's not what happened. And also Judge Wheeler did a couple of things in regard to count two. One, in terms – the issue was illegal exaction liability flows from trying to achieve proportionality of the greatest degree of practicability. And he found, and it's not – his finding was not clearly erroneous, that in light of what we just mentioned that there were many years in which achieving proportionality was not practicable, not feasible. Which he's using interchangeably, I think correctly, precisely because of the droughts. And so the reason – No, because of the droughts. But it could have been closer achieved if collections had been made. So isn't – doesn't he have to at least address – I mean he may – look, he may dismiss that out of hand. But even if we agree with you on the statutory construction, doesn't he have to at least address whether or not proportionality could have been better achieved through more vigilant collections by the government? Or maybe there should have been some reduction due to the government's non-collection. Why should power have to pay for the amount that's actually owed by the water people but not being collected? Right, understood. And our position is – I mean I'm just saying shouldn't he have to address it? I don't see it addressed anywhere in his opinion. Right. Well, he – in terms of the so-called lack of enforcement, he addressed – he does have a paragraph where he addresses their argument that there was a lack of enforcement and that the practices work better in theory versus practice. And he also heard evidence that reclamation from 1993 to 2015 collected 99.8% of M&R payments as well. At the end of the day, he concluded that the practices did not constitute illegal exaction. And I believe that's premised upon his conclusion that ultimately in terms of achieving proportionality, the reason it wasn't proportionally even close proportional was not because there were isolated payments here and there that were parked in the wrong account, which eventually were credited, which means proportionality is net. But rather because of the severe droughts and severe depression to water revenues, which impacted and which braided that delta that was discussed. I understand that the drought is the elephant in the room and the non-collections are de minimis by comparison in terms of the – to the extent they drive a lack of proportionality, but they would have improved upon proportionality. I'm just concerned that I didn't see him even address that issue and that maybe it's not a matter of reversing and saying that there hasn't been proportionality, but maybe that issue would have to be vacated for the trial court to clearly address it in the first instance. Maybe. Maybe. All right. Okay. Thank you so much, Mr. Oliver. Mr. Schwartz will give you two minutes of rebuttal time. Thank you, Your Honor. The government's argument is self-defeating. On one hand, they tell you Congress didn't anticipate low water years or didn't anticipate situations in which the non-discretionary revenues wouldn't materialize. On the other hand, they tell you we know what Congress would want. We know Congress would want you to collect the $30 million, even if that means dramatically disproportionate payments. Their argument is self-defeating in another way, too. Well, I mean, you don't say we know what Congress would want as though he's sitting around with a Ouija board. It's the language of the statute. It says $30 million. As a cap, not a floor. Their argument is self-defeating in another way. They tell you proportionality is not one of the limitations, but the provisos are. But without proportionality, none of the water-specific provisos, not acre, foot, caps, not ability to pay relief, they can't affect total collections at all. And the reason is that because under their theory, power always pays the difference.  On their theory, there's only one limitation on collection of the $50 million. That's the $30 million combined cap on power and water collections. And, yeah, there are two provisos, but they apply sequentially, not simultaneously, so they make up one limitation. So first it's $30 million. Eventually, when they complete certain projects, it will become $15. But the cap on combined water and power collections, in their view, is the only limitation on reaching $50 million. But C2 says subject to limitations, plural. So at the end of the day, we believe that Congress understood that during droughts, water doesn't get the benefit of the project, and neither does power. Power doesn't get the hydropower. And we think that Congress wanted equal parallel protections for water and power. And why wouldn't they put caps in for power? The proportionality provision functions that way. It piggybacks on the water caps. Well, if that were true, then why would they say to the greatest degree practicable as opposed to just saying in the same proportion? We covered that before. Congress expected these provisions to be implemented prospectively based on estimates. And the $25 per acre foot charge on certain M&I transfers theoretically could drive the water collections beyond their proportional amount. Let me say one last thing. It's undisputed that Congress commanded, I mean they say shall, commanded Reclamation to achieve proportionality to the greatest degree practicable. That's proportional to the benefits to be derived from the project. The government's interpretation not only fails to adopt what we think the statute requires, which is a protection for power in the instance where they're not getting a benefit from the project. Their interpretation goes to the other extreme because it takes the deficient water collections, the absent water collections, and makes power pay for them. So power has to pay the most in the years when they get the least, and that's the opposite of proportionality. Okay, Mr. Schwartz, we have your argument. We thank both counsel. The case is taken under submission. Thank you. Thank you.